## COX v. UNITED STATES.
### No. 46321.

Court of Claims.

Nov. 3, 1947.

Fred W. Shields, of Washington, D. C. (King & King, Harry D. Ruddiman and Paul M. Rhodes, all of Washington, D. C., and Thomas J. Surface, of Roanoke, Va., the brief), for the United States.

D. B. MacGuineas, of Washington, D. C., John F. Sonnett, Asst. Atty. Gen., and Peyton Ford, Acting Asst. Atty. Gen. (Horace G. Marshall, of Chicago, Ill., on the brief), for the U. S.

Before JONES, Chief Justice, and MADDEN, HOWELL, WHITAKER and LITTLETON, Judges.

MADDEN, Judge.

This is a suit to recover damages for an alleged tort of the Government occurring in 1940, before the enactment in 1946 of the Federal Tort Claims Act, 60 Stat. 842, 28 U.S.C.A. § 931. We have jurisdiction by reason of a Private Act of Congress, which is quoted in finding 2. The facts as we have found them are recited in the findings and will not be repeated in this opinion.

The only serious legal question in the case is that of the liability of the Government for the negligent driving of Sergeant Claude Roberts. The facts as to how he came to be driving the army vehicle at the time of the accident are shown in findings 5 and 6. As there found, it was no part of his regular duties in the army to drive a motor vehicle and he had no army permit to operate a motor vehicle. In civilian life he had operated passenger cars and a truck.

Army Regulations No. 850-15, Par. 15, in effect at the time of the collision was as follows: Assignment of motor vehicles to drivers.—Insofar as practicable each motor vehicle will be assigned to a regular driver and normally will not be operated by any other person.

We do not attach much significance to the quoted regulation, since it seems to be intended only to place responsibility for the care and use of particular vehicles upon individual soldier drivers. But Paragraph 16 of the same Regulations provides:

16. Permits for motor vehicle operators. —a. W. D., Q. M. C. Form No. 228 (U. S. Army Motor Vehicle Operator's Permit) will be issued by commanding officers of organizations, posts, camps, or stations to all operators of military motor vehicles.

b. Motor vehicle operators' permits will be issued only to individuals who have satisfactorily passed an examination conducted by a qualified commissioned officer covering the following subjects:

(1) Mechanical.—Nomenclature and functions of major units of the motor vehicle.

(2) Operation.—(a) Actual driving of the vehicle, involving use of controls, reversing, and parking under usual conditions of traffic and terrain.

(b) Traffic regulations, road procedure, safety precautions, speed limits, and vehicle abuse.

\*　　\*　　\*　　\*　　\*　　\*

c. Possession of a motor vehicle operator's permit should be a guarantee that the individual is a qualified driver. Accordingly, the permit will be suspended or revoked when an accident or other cause so warrants.

\*　　\*　　\*　　\*　　\*　　\*

This provision shows that, in general, army motor vehicles were to be operated only by tested and licensed drivers. It does not, and could not, contain any express prohibition against driving by unlicensed soldiers, since many occasions must arise when such driving is necessary and is in fact done.

We have then, a situation in which the plaintiff is a victim of the negligent driving of a soldier driving an army ambulance in a long army convoy. The reason the particular soldier was driving was because the assigned driver was tired. At the hearing it was disclosed, somewhat accidentally and just because the Government called him as a witness to the accident, that the assigned driver of the vehicle just ahead of the collision vehicle in the convoy was not driving his vehicle, but had turned it over to another soldier because he was tired and sleepy. It thus appears that the only two vehicles in the convoy about which there is any evidence were both being driven in violation of what the Government claims to be the meaning of Army Regulations. We think it would be difficult to assume that the Regulations were not, to a considerable extent, honored in the breach rather than in the observance.

What reason assigned drivers had to be tired, or to be tired and sleepy, we do not know. The convoy was on a long cross country journey. What stops they had made, what checks had been made to ascertain the need of assigned drivers for relief, we do not know because the Government at the hearing, did not tell us. In the Government's brief, it talks as if there was only one officer with this convoy of some 125 vehicles and numerous personnel who would have the responsibility for the condition of the assigned drivers. From our knowledge of the Army hierarchy, we know, of course, that this was not the fact. If, in fact, the Army made no provision for adequately checking the need for relief drivers, and supplying them if needed, it was negligent. Whether it did or not we do not know because the Government does not tell us. If it did not, it must have anticipated that its assigned drivers would secure their own relief, as the only two assigned drivers about whom there is any evidence did. If it did so anticipate, it authorized the relief drivers and is, under the Private Act Dec. 7, 1944, 58 Stat. 1050, which is the law of this case, responsible for the negligence of the driver of the colliding ambulance.

We think that there is a presumption that the driver of an employer's vehicle, in a long convoy of such vehicles, going straight on the employer's business, is driving with authority. We think that presumption is not rebutted by a mere showing of lack of express authority, and of printed regulations, not clear in their purport, which tend to show lack of authority. We think the Government should have told us the rest of the relevant facts. We are not willing to give the Government immunity for the damage negligently caused by the driver of an Army vehicle, traveling on Army business, upon so meager a showing of asserted lack of authority.

Judgment will be rendered for the plaintiff for $4,000.

It is so ordered.

JONES, Chief Justice, and HOWELL, WHITAKER and LITTLETON, Judges, concur.